**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| United States of America, | ) | **CASE NO. 1:25 CR 519** |
| | ) | |
| Plaintiff, | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| vs. | ) | |
| | ) | |
| Maurice Gibson, | ) | |
| | ) | **Memorandum of Opinion and Order** |
| | ) | |
| Defendant. | ) | |

**INTRODUCTION**

This matter is before the Court upon Defendant's Motion to Suppress Evidence Obtained in Violation of the Fourth Amendment. (Doc. 26.) Defendant is charged with drug and firearm offenses. The issue before the Court is whether the affidavit supports a finding of probable cause to justify the issuance of the search warrant. For the reasons that follow, Defendant's Motion to Suppress Evidence Obtained in Violation of the Fourth Amendment is DENIED.

**BACKGROUND**

The following facts are taken from the affidavit submitted by Detective Shaun Stanton in support of his application for the at-issue search warrant.

On December 19, 2023, a confidential informant ("CI") told special agents with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") that an individual known to the CI as "Mike D" was selling narcotics from an apartment located at 5988 Bear Creek Drive, Bedford Heights, Ohio 44146 (the "Bear Creek Apartments") as well as in the area of East 93rd Street and Saint Claire

Avenue in Cleveland, Ohio. The CI also provided the agents with Mike D's physical description, cell phone number, and the make and model of his car: a silver Volkswagen Tiguan.

ATF agents conducted surveillance in the area of the Bear Creek Apartments and observed a silver Volkswagen Tiguan in the parking lot. Agents ran the plates of the vehicle and learned that the owner of the vehicle was defendant Maurice Gibson ("Defendant"). Defendant matched the physical description provided by the CI of Mike D. ATF agents showed the CI a photo of Defendant and the CI confirmed that Defendant was the individual known to the CI as Mike D.

From there, ATF agents coordinated three separate controlled buys of narcotics from Defendant. First, in early January 2024, the CI, in the presence of ATF agents, placed a recorded call to Defendant's number. During this call, Defendant, in substance, agreed to sell crack cocaine to the CI. The CI then traveled to meet Defendant at a pre-determined location in Cuyahoga County. At that location, the CI and an undercover ATF agent parked on the street and watched Defendant come from the front of a residence in the area and entered a white Dodge pickup truck. CI followed into the passenger seat. Inside the vehicle, Defendant provided the CI with two clear plastic bags containing a white rock-like substance consistent with crack cocaine. The CI provided Defendant with pre-recorded police money in exchange for the suspected crack cocaine and the CI returned to the CI's own vehicle. Defendant went back into the front door of the residence he came from. The CI turned over the contraband to ATF Special Agent John Remick-Cook ("SA Remick-Cook"), which later tested positive for cocaine.

Second, in early February 2024, the CI placed another recorded phone call to Defendant's cell phone number. During this call, Defendant, in substance, agreed to sell crack cocaine to the CI at the Bear Creek Apartments. The CI traveled to the Bear Creek Apartments' parking lot and called

Defendant. Defendant walked out of the southern entrance door of the Bear Creek Apartments and entered the CI's vehicle. After the controlled buy, Defendant left the CI's vehicle and went back into the same building door he came from. The CI went to a pre-determined staging location and provided the contraband to SA Remick-Cook. The contraband was later tested and determined to be cocaine.

Detectives reviewed security camera footage from the Bear Creek Apartments to observe Defendant's movements and activities. The footage shows Defendant enter apartment 215 (the "Apartment") with the Apartment's leaseholder approximately one hour before the early February controlled buy. Upon being contacted by the CI for the early February controlled buy, Defendant can be seen on the footage exiting the Apartment and walking into the south stairwell. Defendant is seen on the footage exiting the Apartment's building in a time and manner consistent with walking directly out of the building. Video footage then shows Defendant walk directly back to the Apartment after the early February controlled buy concluded.

Third, during the week of February 19, 2024, the CI placed another recorded call to Defendant's cell phone number. During the call, Defendant agreed to meet at the Bear Creek Apartments and sell crack cocaine to the CI. The CI went to the Bear Creek Apartments' parking lot and called Defendant. Defendant walked out of the southern entrance door of the Apartment's building, just as he had done during the second controlled buy, and entered the CI's vehicle. After the buy, the CI left the parking lot and met with SA Remick-Cook to give him the contraband at a pre-determined location. The contraband was later tested and determined to be cocaine.

Following the third controlled buy, detectives again reviewed security camera footage from inside of the Apartment's building. Detectives observed Defendant and the leaseholder arrive at the Apartment about 20-30 minutes before the controlled buy. Shortly after being contacted by the CI,

Defendant exited the Apartment and walked down the south stairwell with a garbage bag. Defendant walked out of the Apartment's building, threw the bag into a white pickup truck, and then entered the CI's vehicle to conduct the transaction. After the transaction, Defendant entered the pickup truck, drove to the dumpsters, discarded the garbage, and departed the area. He returned to the Apartment several hours later.

For all three of the controlled buys, agents searched the CI and the CI's vehicle before and after, used pre-recorded police money, utilized audio, video, and transmitting equipment, and used surveillance units to observe the buys.

Based on the three controlled buys and the information provided by the CI, Detective Shaun Stanton prepared a search warrant for the Apartment and any vehicles located on the property specified. Detective Stanton included the signed affidavit (the "Affidavit") in support of the search warrant. The warrant was reviewed and signed by Cuyahoga County Judge Kelly on February 20, 2024. The warrant included the following:

> Crack, cocaine, and other narcotic drugs and/or other paraphernalia used in the taking of drugs and/or preparation of illegal drugs for sale, use or shipment, records of illegal transactions, articles of personal property, papers documents tending to establish the identity of persons in control of the premises, safes and their contents, contraband including but not limited to currency, guns, scales, plastic bags, wax bags, computers, computer software, cellular phones, electronic storage media, audio recordings, video recordings, and all other evidence of the violation of the Ohio Revised Code, to wit: O.R.C. 2925.03 and O.R.C. 2925.11 et seq.

Law enforcement executed the search warrant of the Apartment and seized various items, including a firearm, cash, and suspected crack cocaine. Defendant was subsequently charged with three counts Distribution of Controlled Substances in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), one count Possession with Intent to Distribute a Controlled Substance in violation of 21

U.S.C. §§ 841(a)(1) and (b)(1)(B), and one count Felon in Possession of Firearm and Ammunition in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8).

Defendant now moves to suppress all evidence seized from the apartment. (Doc. 26.) The Government opposes Defendant's motion. Defendant did not file a reply.

**STANDARD OF REVIEW**

The Fourth Amendment to the United States Constitution provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." "[A] state search warrant being challenged in a federal court must be judged by federal constitutional standards." *United States v. McManus*, 719 F.2d 1395, 1397 (6th Cir. 1983).

Probable cause is "not a difficult standard to meet." *United States v. Whitlow*, 134 F.4th 914, 919 (6th Cir. 2025). Probable cause is defined as "reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion, and is found to exist when there is a fair probability that evidence of a crime will be located on the premises of the proposed search." *United States v. Jackson*, 470 F.3d 299, 306 (6th Cir. 2006); *United States v. Hines*, 885 F.3d 919, 923 (6th Cir. 2018) ("Probable cause exists when an affidavit shows a 'fair probability' that criminal evidence will be found in the place to be searched.").

Probable cause to search requires "a sufficient nexus between the place to be searched and the evidence sought." *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004). And, the supporting "affidavit must suggest that there is reasonable cause to believe that the specific things to be searched for and seized are located on the property to which entry is sought and not merely that the owner of

the property is suspected of crime." *United States v. McPhearson*, 469 F.3d 518, 524 (6th Cir. 2006) (internal quotations marks and citations omitted).

This Court "examine[s] the affidavit's four corners to determine whether, under the totality of the circumstances, the low bar of probable cause has been overcome." *United States v. Lawson*, 2022 WL 2813239 (6th Cir. July 19, 2022) (citing *United States v. Jackson*, 470 F.3d 299, 306 (6th Cir. 2006)).  Moreover, "[a] judicial officer who issues a warrant 'should be paid great deference.'" *United States v. Tagg*, 886 F.3d 579, 586 (2018) (quoting *Illinois v. Gates*, 462 U.S. 213, 236 (1983) (internal quotation marks omitted)). "The reviewing court is not permitted to attempt a de novo review of probable cause; the issuing judge's decision should be left undisturbed if there was a 'substantial basis' for the probable-cause finding." *Id.* at 586 (citing *Gates*, 462 U.S. at 238–39). An "affidavit is judged on the adequacy of what it does contain, not on what it lacks, or on what a critic might say should have been added." *United States v. Allen*, 211 F.3d 975, 975 (6th Cir. 2000). Still, reviewing courts must ensure that the issuing judicial officer did "not serve merely as a rubber stamp for the police." *United States v. Leon*, 468 U.S. 897, 914, (1984) (quoting *Aguilar v. Texas*, 378 U.S. 108, 111 (1964)). Further, reviewing courts "will not defer to a warrant based on an affidavit that does not 'provide the magistrate with a substantial basis for determining the existence of probable cause.'" *Id.* at 915 (quoting *Gates*, 462 U.S. at 239).

The Supreme Court has recognized a good faith exception when evidence must otherwise be excluded because it has been obtained in violation of the Fourth Amendment. This exception applies when "reliable physical evidence [is] seized by officers reasonably relying on a warrant issued by a detached and neutral magistrate[.]" *Leon*, 468 U.S. 897, 913 (1984). *Leon* recognized, however, that the evidence may still be suppressed where the officer lacks "reasonable grounds for believing that

6

the warrant was properly issued." *Id.* at 922-23. The Sixth Circuit has recognized that a law enforcement officer lacks such reasonable grounds, and the good faith exception does not apply, in at least four situations:

> (1) where the issuing magistrate was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard for the truth; (2) where the issuing magistrate wholly abandoned his judicial role and failed to act in a neutral and detached fashion, serving merely as a rubber stamp for the police; (3) where the affidavit was nothing more than a "bare bones" affidavit that did not provide the magistrate with a substantial basis for determining the existence of probable cause, or where the affidavit was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) where the officer's reliance on the warrant was not in good faith or objectively reasonable, such as where the warrant is facially deficient.

*United States v. Lewis*, 81 F.4th 640, 647 (6th Cir. 2023) (citations omitted).

## DISCUSSION

In arguing that the search warrant here lacked probable cause, Defendant makes two contentions: (1) the Affidavit fails to corroborate the CI's information or prior reliability and (2) the Affidavit fails to establish a nexus between the drug evidence sought and the Apartment. He requests an evidentiary hearing as to these issues. In response, the Government contends that Defendant lacks standing to move to suppress the search warrant for the Apartment but, even so, his motion fails on the merits. This Court agrees with the Government.

### 1. Defendant Lacks Standing to Challenge the Search Warrant for the Apartment

A defendant has the burden of establishing his standing to bring a Fourth Amendment challenge. *United States v. Ponder*, 240 F. App'x 17, 19 (6th Cir. 2007) (citing *United States v. Smith*, 263 F.3d 571, 582 (6th Cir. 2001)). "[A] defendant has standing only if he has a Fourth Amendment interest in the property searched." *United States v. Russell*, 26 F.4th 371, 377 (6th Cir. 2022) (citing *Byrd v. United States*, 138 S. Ct. 1518, 1530 (2018)). "This interest can either be a

property or a privacy interest." *Id.* (citing *Byrd*, 138 S. Ct. at 1526). To establish an actionable privacy interest under the Fourth Amendment, a defendant must establish that he or she possessed a "legitimate expectation of privacy in the area searched." *United States v. Thornton*, 493 F. Supp. 2d 1024, 1029 (S.D. Ohio 2007).

Here, Defendant has failed to meet his burden of establishing his standing to challenge the search warrant for the Apartment. Defendant does not contend that he lives at the Apartment or was even an overnight guest there. He does not contend he had keys or some other right of access to the Apartment. He does not allege any familial or romantic relationship with any occupant of the Apartment. He does not contend that he has a right to exclude others from the Apartment. He does not point to any mail, personal items, or clothing stored at the Apartment. Plainly, Defendant has not provided this Court with *any* facts that would establish that he had any "legitimate expectation of privacy" in the Apartment.

Rather, in his motion, Defendant seemingly concedes the facts from the Affidavit that establish his lack of standing. He attempts to completely separate himself from the Apartment. He focuses on the fact that the Apartment is leased to one Dejanetta Knowles ("Knowles") and that both times he was observed arriving at the Apartment before controlled buys, he was accompanying Knowles, who possessed the key to the Apartment. He also draws the Court's attention to the fact that a search of a trash bag Defendant carried out of the Apartment produced papers addressed to Knowles. In Defendant's view, all that ties him to the Apartment is "[t]he simple fact [that he was] observed entering [and] exiting [the] [A]partment[.]" (Doc. 26, at 4.) Defendant's motion suggests that he was, at most, a casual, daytime visitor at the Apartment, which does not afford him Fourth

8

Amendment protections therein. *United States v. Sangineto-Miranda*, 859 F.2d 1501, 1510 (6th Cir. 1988) (finding that a casual visitor did not have a privacy interest in an apartment).

For these reasons, Defendant has wholly failed to meet his burden of establishing standing to challenge the search warrant for the Apartment and his motion must be dismissed.

### 2.  Defendant's Motion Fails on the Merits

Even if Defendant did have standing, his challenge to the search warrant would still fail.

### A.  The Affidavit Sufficiently Corroborated the CI's Information

When an officer cannot aver as to a confidential informant's reliability from previous tips or a lengthy relationship, "courts insist that the affidavit contain substantial independent police corroboration." *United States v. Frazier*, 423 F.3d 526, 532 (6th Cir. 2005). "[T]his independent police corroboration may be established by a police-monitored controlled buy[.]" *United States v. Hawkins*, 278 F. App'x 629, 635 (6th Cir. 2008) (citing *United States v. Coffee*, 434 F.3d 887 (6th Cir. 2006), *cert. denied*, 547 U.S. 1158, (2006)). "Indeed, even a single controlled purchase can be sufficient to establish probable cause to believe that evidence of drug trafficking is present at the purchase location." *United States v. Moore*, 999 F.3d 993, 997 (6th Cir. 2021).

Here, as outlined in the Government's response, the Affidavit detailed officers' successful efforts to corroborate the CI's information concerning Defendant's cell phone number, vehicle, identity, and the location of his drug activity. Further, the Affidavit detailed three separate controlled buys—two of which occurred at the Apartment—by the CI from Defendant. The Affidavit also included the precautions taken by officers to corroborate the CI's information and ensure Defendant was the one supplying the cocaine to the CI. Taken together, this information establishes substantial independent police corroboration of the CI's information. *See Hawkins*, 278 F. App'x at 635 (As in *Coffee*, "Officer [Miller's] statements that he set up the controlled buy and took necessary precautions

9

before and after the orchestrated purchase adequately corroborated the CI's information and, thus, provided sufficient probable cause for the issuance of the search warrant.").

### B. The Affidavit Established a Sufficient Nexus Between the Drug Evidence Sought and the Apartment

"Evidence that one leaves a 'residence, engage[s] in a drug transaction, and then return[s] into the residence' 'plainly demonstrate[s] a sufficient nexus' with the location." *United States v. Sanders*, 106 F.4th 455, 463 (6th Cir. 2024) (citing *United States v. Ellison*, 632 F.3d 347, 349 (6th Cir. 2011)); *United States v. Florence*, 150 F.4th 773, 777–78 (6th Cir. 2025) ("Just like in *Sanders*, law enforcement observed Florence leave a residence, complete a drug transaction, and then return to that residence. And just like in *Sanders*, the agents' observations established a fair probability that Florence was storing illegal drugs in the residence or, at the very least, 'evidence of drug trafficking,' including from the controlled buy that officers had just conducted.").

Here, like in *Sanders* and *Florence*, officers observed Defendant leave the Apartment before the early February controlled buy, sell the CI cocaine, and then immediately return to the Apartment. And like *Sanders* and *Florence*, this "alone 'plainly' sufficed for probable cause." *Florence*, 150 F.4th at 777.

### 3. Defendant Is Not Entitled to an Evidentiary Hearing

"A litigant is not always entitled to an evidentiary hearing, especially when the moving party presents arguments that are 'entirely legal in nature.'" *United States v. Lawson*, 476 F. App'x 644, 648 (6th Cir. 2012) (citing *United States v. Abboud*, 438 F.3d 554, 577 (6th Cir. 2006)).  Rather, "[a] defendant must make at least some initial showing of contested facts to be entitled to such a hearing." *Id.* (quoting *United States v. Giacalone*, 853 F.2d 470, 483 (6th Cir. 1988)). Further, "[a] district court can forgo conducting an evidentiary hearing if sufficient content remains to support a finding of

probable cause after the contested items are set aside." *United States v. Thompson*, 16 F. App'x 340, 344 (6th Cir. 2001).

Here, as it relates to both his standing and the merits of his motion, Defendant does not explicitly contest any of the pertinent facts contained in the Affidavit. At most, he contests the legal significance of those uncontested facts. Accordingly, because the issues before the Court are "entirely legal in nature," the Court finds that an evidentiary hearing is not necessary. *See Lawson*, 476 F. App'x at 648–49.

## **CONCLUSION**

For all the aforementioned reasons, Defendant's Motion to Suppress Evidence Obtained in Violation of the Fourth Amendment (Doc. 26) is DENIED.


IT IS SO ORDERED.

PATRICIA A. GAUGHAN
United States District Judge


Date: 7/21/2026

11